DORSEY & WHITNEY LLP
Juan C. Basombrio (Admitted *Pro Hac Vice*)
600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626
(714) 800-1405

Mark S. Sullivan
51 W. 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for the Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
FIGUEIREDO FERRAZ CONSULTORIA E
ENGENHARIA DE PROJETA LTDA.,

                           Plaintiff,

-against-

THE REPUBLIC OF PERU, MINISTERIO DE
VIVIENDA, CONSTRUCCION Y SANEAMIENTO, and
PROGRAMA AGUA PARA TODOS (PAPT) (successor
by integration to PROGRAMA DE APOYO A LA
REFORMA DEL SECTOR SANEAMIENTO (PARSSA),
formerly known as PROYECTO ESPECIAL
PROGRAMA NACIONAL DE AGUA POTABLE Y
ALCANTARILLADO (PRONAP)),

                          Defendants.
-------------------------------------------------------------------- X

No. 08-CV-0492(WHP)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR ATTORNEYS' FEES AND COSTS

## INTRODUCTION

Defendants the Republic of Peru, Ministerio de Vivienda, Construccion y Saneamiento and Programa Agua Para Todos (collectively, "Defendants") move for an Order directing that Plaintiff Figueiredo Ferraz Consultoria E Engenharia De Projecto Ltda. ("Plaintiff") shall pay the amount of $1,151,312.10 to the Defendants, in order to reimburse the Defendants for their reasonable attorneys' fees and costs incurred in connection with this proceeding.

On February 3, 2012, this Court dismissed the action based on *forum non-conveniens* grounds, pursuant to the instruction of the Court of Appeals (Docket No. 64). The relationship between the parties is governed by Peruvian law, and Peruvian law also governs this motion.

Under Peruvian law, the Defendants are entitled to recover their attorneys' fees and costs from the Plaintiff. For these purposes, Peruvian law makes no distinction as to whether an action is dismissed on procedural grounds or on the merits. Thus, the Defendants are entitled to reimbursement from the Plaintiff of their attorneys' fees and costs incurred herein.

## DISCUSSION

This motion is timely because it must be filed within fourteen (14) days of the dismissal of the action. Fed. R. Civ. Proc. 54(d)(2)(B)(i) ("Unless a statute or a court order provides otherwise, the motion must be filed no later than 14 days after the entry of judgment."). This action was dismissed on February 3, 2012 (Docket No. 64) and this motion was filed within fourteen (14) days thereafter.

This motion for attorneys' fees and costs is governed by Peruvian law. The Ninth Circuit's recent decision in APL Co. Pte. Ltd. v. UK Aerosols Ltd., 582 F.3d 947 (9th Cir. 2009), is directly on point. In APL, a carrier sued a shipper and others pursuant to a bill of lading for expenses incurred in assessing, cleaning up, removing and disposing of a shipment. The district court granted summary judgment in favor of plaintiff APL, but denied its motion for attorneys'

fees.  The Ninth Circuit reversed the district court, holding that APL was entitled to recover its attorneys' fees under the law governing the parties' relationship, which was Singapore law.

The first issue in <u>APL</u> was the contention by the defendant that the plaintiff had failed to provide notice of intent to rely on foreign law under F.R.C.P. 44.1, and for that reason the court could not rely on foreign law.  The Ninth Circuit dismissed that contention because the plaintiff had provided notice of its intent to rely on foreign law in connection with its motion for attorneys' fees, although it did not do so at the start of the action.  <u>APL</u>, 582 F.3d at 955-956.

The Ninth Circuit then proceeded to determine whether the attorneys' fees motion was governed by local or foreign law.  The district court had denied the motion for attorneys' fees, holding that U.S. admiralty law "generally does not permit the prevailing party in an admiralty case to recover attorneys' fees."  <u>APL</u>, 582 F.3d at 956-957.  The Ninth Circuit turned to the language of the bill of lading, and determined that Singapore law applied.  The bill of lading contained no provision for attorneys' fees.  <u>Id.</u>  Nonetheless, because Singapore law generally governed the contractual relationship among the parties, and there was no prohibition of an award of attorneys' fees in the bill of lading, the Ninth Circuit held that Singapore law also would govern the issue of whether the plaintiff was entitled to recover attorneys' fees in that action.  <u>Id.</u> at 957.  The Ninth Circuit noted that:

> "Singapore law provides that, under certain circumstances, the common law of England is in force in Singapore.  Application of English law Act § 3(1) (Sing.).  Under the English rule, attorneys' fees are generally awarded to the prevailing party.  <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 247 (1975)."

<u>APL</u>, 582 F.3d at 957.   The Ninth Circuit then concluded that the "district court erroneously substituted the general American rule in admiralty cases."  <u>Id.</u>

The Ninth Circuit in <u>APL</u> explained that:

"The parties in this case selected Singapore law to govern issues not otherwise covered in the bill of lading.  The district court erred in substituting federal law to govern all provisions of the bill of lading merely because COGSA is federal law."

<u>APL</u>, 582 F.3d at 957.

The defendants in <u>APL</u> also argued that Singapore law should not govern the attorneys' fees motion, because the bill of lading required the parties to "refer any claim or dispute to the United States District Court for the Southern District of New York in accordance with the laws of the United States" and that this language dictated that the "American rule" concerning attorneys' fees should apply in the case.  <u>APL</u>, 582 F.3d at 957-958.  However, the Ninth Circuit held that "[t]his statement is not a choice-of-law provision."  The bill of lading made Singapore law applicable, and the cited language "only refers to the law required to refer a claim to the Southern District of New York, and is not the choice of law that governs the bill of lading."  <u>Id.</u>  Thus, the Ninth Circuit in <u>APL</u> concluded that "Singapore law is the parties' choice of law as to attorneys' fees."  <u>APL</u>, 582 F.3d at 958.

Similarly, in <u>Van Muchin & Co. v. M/V Star Mindanao</u>, 1986 WL 6303 (E.D.Pa. 1986), the district court held that the subject contract "was adjudicated under English substantive law pursuant to the agreement of the parties" and, thus, the federal court  "<u>may deem</u> the agreement to include application of the foreign law regarding award of attorney's fees."  <u>Id.</u> at * 3 (emphasis added).  Therefore, as in <u>APL</u>, even if the subject agreement does not have an attorneys' fees provision, where the agreement is governed by foreign law, foreign law also governs whether attorneys' fees are available to the prevailing party because "liability for fees is ordinarily considered substantive."  <u>Id.</u>; <u>accord</u>, <u>In re Sause Brothers Ocean Towing</u>, 801 F.Supp.

378, 381 (D.Or. 1991) (holding that attorneys' fees could be recovered under Canadian law if Canadian law was found to be the applicable law in the dispute); <u>RLS Assocs., LLC v. United Bank of Kuwait PLC</u>, 464 F. Supp. 2d 206, 220 (S.D.N.Y. 2006) (holding that English rule on attorney's fees applied to dispute over contract governed by English law).

The Second Circuit's decision in <u>Dattner v. Conagra Foods, Inc.</u>, 458 F.3d 98 (2d Cir. 2006), is not to the contrary.  There, an Israeli plaintiff sued several U.S.-based defendants for damages incurred as a result of a French criminal prosecution in which plaintiff was acquitted. <u>Id.</u> at 99.  After the case was dismissed on *forum non conveniens* grounds, defendants' motion to recover costs under Fed. R. Civ. P. 54(d), which had been granted in the district court, was denied on appeal.  <u>Id.</u> at 99-100.

Significantly, however, the <u>Dattner</u> court's analysis was limited to the scope of the term "prevailing party" under that rule, as plaintiff did not argue that he was entitled to litigation costs under any foreign law.  <u>See</u>, <u>e.g.</u>, <u>id.</u> at 101 ("[w]e conclude that a defendant who successfully obtains a *forum non conveniens* dismissal is not a 'prevailing party' within the meaning of Rule 54(d) (emphasis added).  Accordingly, the court's holding in <u>Dattner</u> has no application where, as here, a foreign statute governs the award of attorney's fees.

Accordingly, pursuant to <u>APL</u>, and the other cited precedents, the instant motion for attorneys' fees and costs is governed by Peruvian law, because it is undisputed that Peruvian law governed the contractual relationship between the parties, and the motion should be granted as required by Peruvian law.

*First*, in the case at bar, the Defendants have already provided notice of intent to rely on foreign law (Docket No. 17)  Unlike in <u>APL</u>, where the adverse party complained that the notice was only provided with the motion for fees, here the Defendants provided such notice at the very

-4-

start of the case.  Defendants also incorporate that notice (Docket No. 17) herein by reference, and have filed herewith an addition Notice of Intent to Rely on Foreign Law specifically in connection with this motion.

*Second*, in the case at bar, it is undisputed that the parties' contractual relationship and this dispute are governed by Peruvian law and, therefore, Peruvian law governs this motion for attorneys' fees and costs as well.

In the Complaint herein, the Plaintiff has specifically admitted that "Section One [of the parties' consulting agreement] provided that <u>disputes</u> thereunder <u>were governed by Peruvian law</u>."  Complaint (Docket No. 1) at ¶ 10 (emphasis added).  As an example, the Plaintiff cites to provisions in the consulting agreement that incorporate Peruvian law.  <u>Id.</u>  Plaintiff's allegation in its Complaint constitutes a binding judicial admission that Peruvian law applies to disputes between the parties.  <u>Cortez-Pineda v. Holder</u>, 610 F.3d 1118, 1122 (9th Cir. 2010) ("Allegations in a complaint are considered judicial admissions."); <u>Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand LLP</u>, 322 F.3d 147, 167 (2nd Cir. 2003) (holding that allegations in a complaint are judicial admissions that bind a party "throughout the course of the proceeding.").  Plaintiff's broad admission that Peruvian law governs all "disputes" arising from the subject consulting agreement clearly is broad enough to encompass this action.

The conclusion that Peruvian law applies also is consistent with the approach of the Plaintiff and Defendants throughout these proceedings, which has been to recognize that their contractual relationship is governed by Peruvian law.  <u>See</u>, <u>e.g.</u>,

- Plaintiff's Complaint (Docket No. 1) at ¶¶ 10 ("Section One [of the consulting agreement] provided that disputes thereunder were governed by Peruvian law"), 31 ("The Award became a final judgment under Peruvian law ...") , <u>supra</u>;

- Plaintiff's Amended Complaint (Docket No. 15) ¶¶ 14 ("Section One [of the consulting agreement] provided that disputes thereunder were governed by Peruvian law"), 35 ("The Award became a final judgment under Peruvian law ...")

- Defendants' Rule 44.1 Notice of Intention to Rely Upon Foreign Law (Docket No. 17) ("Defendants intend to raise issues of Peruvian law in support of their Motion to Dismiss the Complaint in the above-referenced action");

- Defendants' Memorandum of Law in Support of Motion to Dismiss (Docket No. 18) at pp. 8, 10 ("[T]he Agreement is governed by Peruvian law, [. . .] complex issues of Peruvian law exist"), 15, 16 ("Peruvian law applies"), 21, 23, 25 ("From a Peruvian law perspective, the Panama Convention also supersedes the New York Convention . . .");

- Declaration of Defendants' legal expert Jorge Avendaño (Docket No. 20) at pp. 44 ("In effect, being a process of enforcement of a national award, Peruvian law applies");

- Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Docket No. 24) at pp. 1 ("There is no question here that under the applicable 'core functions' test, as well as Peruvian law, the Program and the Ministry are the same legal entity as the Republic. . ."), 16 ("And Peruvian law evidences that the Republic plainly exercises control over the Program through the Ministry"); 17 ("[W]hen determining whether the Republic and Ministry are the same legal entity as the Program under Peruvian or international public law, this Court should look to Peruvian law to determine the nature of the entities' core functions"), 25 ("[T]he summary nature of this proceeding ensures that [the]

application [of Peruvian law] would surely not burden this Court even if required");

- Statement of Plaintiff's legal expert Richard Martin Tirado (Docket No. 25) (declaration by Peruvian attorney retained by the Plaintiff regarding the "the administrative structure of the Peruvian state");

- Defendants' Reply Brief in Support of Motion to Dismiss (Docket No. 30) at p. 4 ("Figueiredo invoked Peruvian law and benefited from the national nature of the arbitration. It would be manifestly unjust to allow Figueiredo to enforce the resulting Award while depriving the Defendants of their governmental privileges under the same law, which may only be afforded in the Peruvian judicial system to which the parties agreed to 'subject themselves' under the Agreement");

- Second Declaration of Jorge Avendaño (Docket No. 32) (rebutting Plaintiff's expert Dr. Martin's statements on the substance of the applicable Peruvian law); and

- Plaintiff's Opposition to Motion to Strike (Docket No. 36) at p. 10 ("Dr. Martin's analysis of the aforementioned topics is derived from Peruvian law and the public record …").

Indeed, it would be unreasonable to conclude that anything other than Peruvian law governs the contractual relationship at bar, because the contract was executed in Peru, was subject to Peruvian law, and the resulting arbitration took place in Peru under Peruvian law. There is absolutely no nexus to the United States in this action that could serve as a basis for even a colorable argument that the parties' contractual relationship was governed by anything other than Peruvian law.

-7-

*Third*, under Peruvian law, the Defendants are entitled to reimbursement by the Plaintiff of their attorneys' fees and costs incurred in this action.

Together with this motion, the Defendants have submitted the Declaration of Dr. Katty Aquize ("Aquize Declaration"), the Public Solicitor General (Procuradora Publica) of the Ministerio de Vivienda, Construccion y Saneamiento (the Ministry sued by the Plaintiff), a Peruvian attorney.  Dr. Aquize confirms that Peruvian statutes address the issue whether the prevailing party (parte vencedora) is entitled to the reimbursement of its attorneys' fees, and that attorney's fees are included in the costs of process to which the prevailing party is entitled to recover under Peruvian law.

> With respect to the payment of attorney's fees, the Civil Procedural Code of the Republic of Peru establishes in the first paragraph of article 441 that the prevailing party's attorney's fees are included in the prevailing party's costs of a judicial proceeding.

Aquize Declaration at ¶ 3 (see also attached copy of article 411).

Dr. Aquize notes that under articles 411 and 412 of the Peruvian Code of Civil Procedure, the prevailing party is entitled to reimbursement of attorneys' fees from the other party in an action.  The award of fees is automatic unless a judge declares otherwise.

> Further, Article 412 of the same Code indicates that the prevailing party need not bring an action for reimbursement of attorney's fees as reimbursement is the liability of the loosing [sic] party, except in the case of an express and justified judicial declaration of exoneration.

Aquize Declaration at ¶ 4 (see also attached copy of article 412).

Dr. Aquize further clarifies that Peruvian law makes no distinction whatsoever with respect to whether the party requesting attorneys' fees prevailed in the action based on an adjudication on the merits, or prevailed based on procedural grounds without an adjudication on the merits.

As can be observed, the Civil Procedural Code of the Republic of Peru does not make any distinction with respect to whether the judicial proceeding was won based on an adjudication of the merits, or based on a procedural ground without an adjudication on the merits.

Aquize Declaration at ¶ 5.

Dr. Aquize also brings to this Court's attention the Peruvian Supreme Court's decision in Cassation (the term used for proceedings before the Peruvian Supreme Court) case no. 3322-00-CALLAO, which held that the right to attorneys' fees is not dependent on whether the judgment is based on the merits or was entered based on procedural reasons that require the termination of the judicial process.

In particular, we can mention the resolution of the Supreme Court of the Republic of Peru, in Appeal No. 3322-00-CALLAO, that declared, "...the payment of attorney's fees and costs in a judicial process is a collateral issue that is not dependent on the merits of the action or the reasons why the judicial proceeding was concluded ..."

Aquize Declaration at ¶ 6.

Therefore, it is clear that under Peruvian law the prevailing party is entitled to recover its attorneys' fees regardless of whether the action was dismissed on the merits or on procedural grounds.  Accordingly, the fact that the instant action was dismissed on forum *non conveniens grounds* is no impediment to the award of attorneys' fees and costs under Peruvian law.

The Court should order the Plaintiff to pay to the Defendants the amount of $1,151,312.10 in order to reimburse the Defendants for their reasonable attorneys' fees and costs incurred in this proceeding.  As established above, Peruvian law requires an award of attorneys' fees and costs to the prevailing party.  Peruvian law does not impose a  "reasonableness" standard on the amount of attorneys' fees to be awarded.  Nonetheless, there can be no doubt that the amount of attorneys' fees and costs (including expert fees and court costs) sought by the Defendants  is reasonable.

Plaintiff sued to convert the subject arbitration award into a federal judgment for approximately $21 million.  As this Court is aware, the Defendants filed a complex motion to dismiss, and the matter was the subject of a complex appeal.  Lead defense counsel Juan Basombrio has submitted a Declaration which details and quantifies the attorneys' fees and costs incurred in the defense of the action, and establishes that the amounts were both reasonable and necessary, and attaches the redacted invoices billed to the Defendants.  Based on the foregoing, the requested award of attorneys' fees and costs clearly is reasonable, as the Court should agree based on its own experience.

## **CONCLUSION**

For the foregoing reasons, the Court should order the Plaintiff to pay to the Defendants the amount of $1,151,312.10, in order to reimburse the Defendants for their reasonable attorneys' fees and costs incurred in this action.

Respectfully submitted,

Dated: New York, New York
       February 17, 2012              DORSEY & WHITNEY LLP


                                       By:  s/ Juan C. Basombrio
                                           Juan C. Basombrio (Admitted *Pro Hac Vice*)
                                           Mark S. Sullivan

                                       600 Anton Boulevard
                                       Costa Mesa, California  92626
                                       (714) 800-1400

                                       51 W. 52nd Street
                                       New York, New York  10019
                                       (212) 415-9200

                                       *Attorneys for Defendants*